## LUCKING v. DETROIT & CLEVELAND NAV. CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1922.)

No. 3625.

**1. Courts &mdash;289—Alleged right under federal statute held to give federal court jurisdiction.**

A federal court *held* to have jurisdiction of a suit against a navigation company to require it to continue operation of an established transportation line, where the suit was grounded on the claim that such continued operation was required by Interstate Commerce Act, Feb. 4, 1887, as amended.

**2. Shipping &mdash;14—Carrier by water not bound to maintain established route.**

A navigation company, incorporated for and engaged in the business of a common carrier by water on the Great Lakes, in interstate and intrastate commerce, is not required by the common law nor by the Interstate Commerce Act of February 4, 1887, as amended, nor by any statute of the state of Michigan, to continue to operate its vessels over an established route between certain ports, because cessation of such operation would entail inconvenience or hardship upon the public served by such route.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by William Lucking against the Detroit & Cleveland Navigation Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 273 Fed. 577.

The parties below were aligned as here. The appeal is from an order dismissing plaintiff's bill in equity. The following excerpt from the opinion of District Judge Tuttle (273 Fed. 577) succinctly and sufficiently states the case as presented by the bill and the motion to dismiss.

"This cause is before the court on motion to dismiss the bill of complaint. The material allegations of such bill are as follows: That plaintiff is a citizen and resident of the city of Detroit, Mich., which is situated in this district; that the defendant is a Michigan corporation, having its principal office and place of business in said city, and that it was incorporated for the purpose of engaging in the business of maritime commerce; that said defendant is now, and has been for the last 20 years and more, during the navigation season, which includes the months of May, June, July, August, and September, a common carrier for hire, and engaged in interstate and intrastate transportation of passengers and property on Lake Huron and Lake Erie and connecting waters; that in such capacity defendant has each season carried many passengers and much freight over well-known and defined routes, such as between Detroit. Mich., and Buffalo, N. Y., between Detroit and Cleveland, Ohio, and between Toledo, Ohio, and Detroit, Mich., and thence through Lake Huron to and from various cities and ports in Michigan, on said Lake Huron, including Port Huron, Harbor Beach, Oscoda, St. Ignace, and other places; that defendant will continue its interstate business, in its capacity as a common carrier for hire, during the navigation season of 1921 and thereafter; that defendant owns and operates in its said business several large steamers; that in the conduct of such business defendant has, by arrangement with other common carriers by railroad been engaged in the continuous transportation of passengers and freight, partly by railroad and partly by water, from various ports on the routes reached by defendant's steamers to and from various points on the railroads of said other carriers, in both interstate and intrastate commerce, by means of joint tariff rates and arrangements duly entered into in accordance with law, and that defendant will continue so to do

&mdash;For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes
284 F.—32

through the navigation season of the year 1921 and afterwards, and will derive a fair and reasonable return therefrom; that it has been the custom of defendant for several years past to file with the Interstate Commerce Commission, just before the opening and just after the close of its navigation season, supplements to its tariffs, announcing the establishment and the suspension, respectively, of said joint tariffs with said other railroad carriers; that one of the most popular and largely traveled routes on the Great Lakes for years has been that of the defendant from Cleveland and Toledo, Ohio, to and from Detroit and the cities and ports on Lake Huron already referred to; that in the conduct of its said business as a common carrier for hire said defendant has made large profits on its capital investment therein, and in so doing has availed itself of many valuable and costly river and harbor improvements maintained by the United States as an aid to navigation along said water routes; that for several years continuously defendant has operated certain of its steamers over its route, familiarly known as the 'Detroit and Mackinac Route,' between Toledo, Ohio, and Detroit, Mich., and thence northerly to and from said points on Lake Huron, and that many of the communities on said Lake Huron depend largely on the service rendered by said steamers during the navigation season of each year, and transport therein large quantities of freight and great numbers of passengers to and from points in Ohio and New York, and to and from cities and destinations on the lines of said common carriers by railroad in said continuous carriage; that such freight is transported by defendant regularly from year to year, during the navigation season, in said steamers, which have maintained a regular service of four trips per week in each direction on said Detroit and Mackinac route, including four departures from said points on Lake Huron for Detroit and Toledo and way ports on said route, and four departures from Detroit and Toledo for said way ports on Lake Huron; that plaintiff in the past has, and in the future intends to, become a passenger on said steamers of defendant over said route, and has shipped property, including household furniture and supplies for his summer residence, on said steamers, and desires to continue to do so during the navigation season of the year 1921, and thereafter; that plaintiff has been informed and believes that, because of an alleged dissatisfaction on the part of defendant with one of the navigation laws of the United States, commonly referred to as the 'Seamen's Act' (Act March 4, 1915, c. 153, 38 Stat. 1164), defendant has threatened, and intends, to discontinue and abandon the operation of its said steamers over said Detroit and Mackinac route; that it is necessary, before the opening of the navigation season, for the defendant to overhaul and repair said steamers in preparation for operation during the coming season, but that defendant, following its expressed intention to abandon said route, will not prepare said steamers for their usual and customary transportation service; that it is the duty of defendant, both at common law and under the federal statutes, including the Interstate Commerce Act [Comp. St. § 8563 et seq.]'to provide and furnish such transportation during 1921 and thereafter, over said route, as has been its usual custom in the past; that plaintiff has heretofore filed a petition, similar to its present bill, with the Interstate Commerce Commission, but that said Commission has ruled that it has no jurisdiction in the premises; and that this bill is filed also on behalf of all other persons and corporations who may desire to intervene herein.

"The specific relief prayed includes an order requiring defendant to furnish proper and suitable transportation for passengers and property during its navigation season of 1921 and thereafter over said Detroit and Mackinac route according to its past custom, an injunction restraining the defendant from discontinuing such transportation over said route, and a mandatory injunction requiring the defendant to prepare its said steamers for service on said route during the ensuing season of navigation in accordance with its past custom. The defendant has filed a motion to dismiss the bill of complaint, alleging that it appears from said bill (1) that this court is without jurisdiction in the premises, and (2) that the plaintiff is 'not entitled to the relief prayed. These two objections will be considered in the order named;

the allegations of fact contained in the bill being, of course, accepted as true for the purposes of the motion to dismiss."

The jurisdiction of the District Court, as a court of the United States, to entertain the bill was sustained on the ground that plaintiff's contention that relief was affordable under the Interstate Commerce Act was not so unsubstantial and unreasonable as to be frivolous and merely colorable. Upon the merits, however, the District Court, while recognizing that a common carrier, while engaged in transporting freight and passengers over a given route, owes a duty, even in the absence of statute to that effect and as incidental to the occupation in which it is engaged, to receive and carry freight and passengers upon reasonable request therefor, without discrimination and on reasonable rates and charges, and, while also recognizing that railroad companies are not permitted to discontinue at will the rendition of the transportation service for the performance of which they have been endowed with special privileges and powers, was of opinion that navigation companies such as defendant are not forbidden, either by common law or by statute, to withdraw from such transportation, in whole or in part. by abandoning or suspending operation over all or any of their lines or routes. In this court, intervention, to the extent of filing briefs, has been made by or on behalf of certain cities on the discontinued line. which cities it is claimed are injuriously affected by such discontinuance. There is no averment in the bill of complaint that the city of Detroit, or any of the cities intervening in this action, are entirely without railroad service, or that plaintiff is without public service by water or by rail and water between Detroit and Mackinac Island during the navigation season.

Wm. Lucking, of Detroit, Mich. (I. S. Canfield and F. T. Hinks, both of Alpena, Mich., James F. Shepherd, of Cheboygan, Mich., and W. L. Jenks, of Port Huron, Mich., on the brief), for appellant.

A. C. Angell, of Detroit, Mich. (Angell, Turner & Dyer, of Detroit, Mich., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). [1] In our opinion the court below rightly maintained jurisdiction, as a court of the United States, over the case presented by the bill, and for the reasons assigned by the District Judge. Louisville & N. R. Co. v. Rice, 247 U. S. 201, 203, 38 Sup. Ct. 429, 62 L. Ed. 1071; Greene v. Louisville & I. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. We also assume, for the purpose of this opinion, that the bill does not show a lack of sufficient interest in the party complaining, especially as it is filed in the interest not only of plaintiff, but of others similarly situated.

[2] Upon the merits, the case lies within narrow compass. It is undisputed that defendant was incorporated under the general Michigan statute of 1867,[1] which authorized such incorporation "for the purpose of engaging in the business of maritime commerce or navigation within this state, or upon the frontier lakes or other navigable waters, natural or artificial, connected therewith." This statute was superseded by the general incorporation statute of Michigan of June 18, 1903[2] which includes corporations "for engaging in maritime commerce or navigation," and which continued in force all such corporations pre-

---

[1] Act No. 24. § 2, approved February 21, 1867; chapter 181, § 6824. Comp. Laws Mich. 1897.

[2] P. A. Mich. 1903, Act No. 232, § 1; Comp. Laws Mich. 1915, c. 175, § 9017.

viously organized. Defendant's articles of incorporation, which constitute its charter, contain no designation or mention of the route or routes over which navigation was intended, nor did either of such incorporation statutes require such designation. Defendant is indisputably a common carrier by water, and as such is engaged in domestic and interstate commerce, and has been so engaged for more than 20 years. Being engaged in the operation of a public utility, it was and is subject to an enforceable obligation (and, we assume, even in the absence of statute or special contract, by franchise or otherwise) to supply on demand reasonable service in the transportation of passengers and freight over such lines as are at the time operated by it. No question of reasonableness of service as to any route under operation by defendant when this suit was instituted is here presented. The sole question before us is whether, either by common law or by statute (federal or state), defendant is forbidden to cease or suspend navigation over a given route over which it has previously operated, because such cessation entails inconvenience or hardship upon the public previously served by such utility.

In our opinion such suspension or discontinuation of service upon one or more, or all, of the routes theretofore navigated is not forbidden by the common law under circumstances such as exist here. None of the numerous decisions which assert the power of the courts to prevent suspension or discontinuance by a railway company of its rail lines, in whole or in part, have, so far as we are advised, had any relation to navigation companies.[3] So far as decisions denying the right of a railroad company to abandon its lines or tracks may be thought to rest upon common-law principles, unaided by statute, an exception, upon

[3] Prominent among the cases relied on by plaintiff or intervenors are: Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, where it was held that a lease by the plaintiff (which was chartered for "the transportation of passengers in railroad cars constructed and to be owned by the said company") of all its cars to defendant for 99 years, with agreement not to engage in the business of manufacturing, using, or hiring cars during the life of the contract, was ultra vires, the court saying (139 U. S. 50, 51, 11 Sup. Ct. 485, 35 L. Ed. 55), that "the plaintiff exercised a public employment, and was charged with the duty of accommodating the public in the line of that employment, exactly corresponding to the duty which a railroad corporation or a steamboat company, as a carrier of passengers, owes to the public, independently of possessing any right of eminent domain." (Plainly, this decision is not opposed to the conclusion we have announced above.) Interstate Commerce Commission v. Transit Co., 224 U. S. 194, 32 Sup. Ct. 436, 56 L. Ed. 729, where it was held that carriers partly by railroad and partly by water, under a common arrangement for a continuous carriage, are within the Interstate Commerce Act, and so subject to the provisions of the act authorizing the commission to require a system of accounting. (Neither this nor either of the following decisions cited in this note throw light upon the common-law rule.) Chesapeake & Ohio Railway Co. v. Public Service Commission, 242 U. S. 603, 37 Sup. Ct. 234, 61 L. Ed. 520, where it was held, following the Supreme Court of Appeals of West Virginia, that a law of that state which declared that "railroads" shall be public highways, "free to all persons for the transportation of their persons and property," embraces a branch line constructed and operated under it, and imposes on the carrier with respect to such line a continuing franchise obligation to transport passengers as well as freight, and that such obligation may be enforced by state action, although the carrier has long operated the branch

principle, of navigation companies such as defendant may well be found in the absence of contract, express or implied, for operating upon a given route, in connection with the lack of privileges such as eminent domain, as applied either to lines of travel (unnecessary upon the open seas) or to the acquisition of dock and wharf facilities, as well as with the common practice of navigation companies to go out of business altogether, or to change routes and service from time to time, as the interests of the navigation company may dictate. But, whatever may be the reason, the fact that the existence of the common-law power asserted by plaintiff has not heretofore been judicially declared is highly significant.

It is not apparent that the situation is at all changed by the fact that defendant, in common with navigation companies generally, is by the Michigan statute (P A. Mich. 1911, No. 70, April 13, 1911) subject to a tonnage tax in lieu of general property taxes—in practice much larger than the tonnage taxes—nor by the fact that defendant has in previous years found the Mackinac line profitable, and that the operation of defendant's lines, taken as a whole, is profitable.

It remains to consider whether the power asserted by plaintiff has been conferred upon the courts by statute. We think it clear that there is no such federal statute. True, by subsection 1 (a) of the Interstate Commerce Act, as amended (Act Feb. 28, 1920, 41 Stat. c. 91, p. 456, as amended by Act June 5, 1920, c. 235, 41 Stat. 946), the act is made applicable to transportation "partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment," and by subsection 1 (b) to the transportation of commodities generally "partly by rail-

in freight traffic only and never in any other. Grand Trunk R. Co. v. Michigan Ry. Commission, 231 U. S. 457, 34 Sup. Ct. 152, 58 L. Ed. 310, where an order of the state commission requiring certain railroads doing an interstate business to use their tracks within the limits of a city for the interchange of intrastate traffic was sustained as being within the regulating power of the commission, the court remarking (231 U. S. 473, 34 Sup. Ct. 158, 15 L. Ed. 310) that to certain controlling conditions previously mentioned there must be added "the fact that the railroad itself for a long period of time had recognized the situation and had applied the tracks to uses of transportation in the proper sense, as distinguished from mere terminal service, a use which was only abandoned or sought to be abandoned when authority was exerted to prevent unreasonable and to secure reasonable charges for the services." Terminal Taxicab Co. v. District of Columbia, 241 U. S. 252, 36 Sup. Ct. 583, 60 L. Ed. 984, 4 Ann. Cas. 1916D, 765, where it was held that in determining whether a corporation is or is not a common carrier the important thing is what it actually does, and not what its charter says it may do. Gasser v. Garden Bay R. Co., 205 Mich. 5, 171 N. W. 791, where it was held that a railway company, having been incorporated under the laws of the state as a common carrier, and having secured permission from the Railroad Commission to issue stock, and having entered upon the operation of its line under an implied duty to the public to continue its operation as a public service corporation, could not thereafter arbitrarily abandon operations permanently, discontinue the assumed service, and dismantle the road, without the consent of the state through its constituted authority. The syllabus in Hocking Valley R. Co. v. Public Utilities Commission of Ohio, 92 Ohio St. 9, 110 N. E. 521, L. R. A. 1918A, 267, Ann. Cas. 1917B, 1154, which represents the decision of that court, contains nothing specially pertinent to the proposition we are considering.

road or by water," and by subsection 3 transportation is made to include "vessels," and by subsection 4 it is made the duty of every common carrier subject to the act, engaged in the transportation of passengers or property, to furnish such transportation upon reasonable request therefor.

We agree with the District Court that the addition, under the amendment of 1920, of the words "engaged in the transportation of passengers or property" has not increased or altered the nature or extent of the duty imposed upon the common carriers to which it applied. Not only do we find in these provisions of the Interstate Commerce Act no inhibition upon a carrier by water to suspend or discontinue its route or routes in whole or in part (defendant is not a carrier by rail, except in the sense that it carries by water under joint tariffs, rates, and arrangements with rail carriers), but any implication of such inhibition is to our minds plainly repelled by subsection 18 of the amended act, which provides that—

"No carrier by railroad subject to this act shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

This inhibition, directed alone to the "carrier by railroad," indicates, we think, a legislative intent to exclude from its effect carriers by water. We have no doubt the Interstate Commerce Commission rightly disclaimed jurisdiction to act in the premises upon plaintiff's request.

We think it equally clear that no Michigan statute confers upon the courts any authority to restrain the suspension or discontinuance of service over the route in question. The statute of 1919 (P. A. Mich. 1919, No. 56, April 10, 1919) forbids a common carrier by railroad to "abandon its main line of track, or tracks, or any portion thereof, or remove or close any of its main line track, or tracks, except for the purpose of repairing the same or altering the line of the track, except by permission of the Michigan Railroad Commission in accordance with the provisions hereof." Section 1. It is significant that this statute contains no mention whatever of common carriers by water, and discloses, we think, an express legislative intent not to include them.[4] Since the instant suit was brought the Legislature of Michigan has passed an act "to regulate the service, rates, fares and charges of carriers by water within this state" (P. A. Mich. 1921, No. 246, May 18, 1921) which act provides for investigation by the state Public Utilities Commission[5] of any complaint "against any rate, fare, charge, or tar-

[4] In view of this situation there is little, if any, significance in the fact that by the earlier statute creating the Michigan Railroad Commission (P. A. Mich. 1909, Act 300; 2 C. L. Mich. 1915, c. 155, § 8109 et seq.), the term "common carrier" is made to include those engaged in "the transportation of passengers and property wholly by rail or partly by rail and partly by water"; that the term "transportation" includes "all instrumentalities and facilities of shipment" (section 8111); and that every common carrier is required to furnish "reasonably adequate service and facilities" and to "provide and furnish transportation of passengers and property upon reasonable requests therefor" (section 8112).

[5] The Michigan Public Utilities Commission was created by Act No. 419, May 15, 1919, and thus subsequent to the act before referred to, relating to the

iff of any carrier by water within this state, or against any rule, regula-. tion or service of such carrier, or against the neglect, failure, or refusal of any such carrier to * * * observe or perform any rate * * * rule * * * or service," with authority to regulate the performance or observance of such "rate, fare, charge, or tariff, and any rule, regulation, or service," with power to "prescribe the same to be observed by such carrier." Section 4. It is matter of public information that the Michigan Public Utilities Commission has held that it has jurisdiction over some features, at least, of applications to compel resumption of service on the line in question. It scarcely need be said that the existence of such power in the commission confers no authority upon the courts to furnish the relief asked by the bill in this cause.

The order of the District Court, dismissing the bill of complaint, is affirmed.

---

abandonment by a common carrier by railroad of any of its tracks except by permission of the Michigan Railroad Commission. The latter commission was abolished by the act creating the Michigan Public Utilities Commission.

